UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

PACER Cover Sheet
for Electronically Filed Documents

Any data shown here are current as of 06/10/06 . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:** Arvin Payton Sr. and Joan A. Payton

**Case Number:** 05-51104

## Document Information

**Description:** Memorandum Opinion re: [11-1] Motion For Reaffirmation With Wells Fargo Financial Acceptance by Arvin Payton Sr., Joan A. Payton .

**Received on:** 2006-03-16 09:21:36.000

**Date Filed:** 2006-03-16 00:00:00.000

**Date Entered On Docket:** 2006-03-16 00:00:00.000

## Filer Information

**Submitted By:** James Burke

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

In re:
Arvin Payton Sr.
and Joan A. Payton,
    Debtors.                                    No. 7 - 05-51104 - SF

**MEMORANDUM OPINION AND ORDER DENYING APPROVAL OF
REAFFIRMATION AGREEMENT WITH
WELLS FARGO FINANCIAL ACCEPTANCE**

The reaffirmation agreement between the Debtors and Wells Fargo Financial Acceptance ("Wells Fargo") filed February 14, 2006 (doc 11) came before the Court for a hearing on March 2, 2006. Mr. Arvin Payton Sr. appeared and spoke for himself and for Ms. Joan Payton, who was unavailable because of a critical medical procedure scheduled by her doctor on short notice. No notice of the hearing was sent to Wells Fargo.[1] The Debtors are due to receive their discharge no sooner than about April 4, 2006. For the reasons set forth, the Court does not approve the reaffirmation agreement.

**Background**

The Debtors filed their chapter 7 petition on December 27, 2006, thereby making them and Wells Fargo subject to the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") for purposes of the agreement.

---

[1] The Court also called Mr. Paul Kienzle, who listened in on the hearing. Mr. Kienzle has previously stated that he provides legal advice to Wells Fargo about reaffirmations. However, Mr. Kienzle was not representing Wells Fargo in connection with this reaffirmation agreement, and sending to him the notice (doc 12) of this hearing did not constitute notice to Wells Fargo.

In conformity with BAPCPA, the Debtors and Wells Fargo[2] filed a lengthy reaffirmation agreement which appears to contain the requisite disclosures and warnings.

The agreement reaffirms, without reduction, a debt of $20,938.23 for a 2006 Chevrolet K1500 ("truck" or "collateral"). The agreement does not state the value of the collateral, but the attached purchase contract states that the "cash price" of the truck was $21,546.85. The original interest rate was 15.9%; the agreement reduces that to 8%, so that the Debtors under the agreement become obligated to make 69 monthly payments of $380.00 rather than $463.88.

Part D of the agreement is signed by the Debtors and recites as follows:[3]

> 1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $<u>2,800.00</u>, and my actual current monthly expenses including monthly payments on post-

---

[2] The Debtors signed the agreement and forwarded it to Wells Fargo, which completed the agreement and filed it.

[3] The underscored portions are handwritten additions to the printed text. Based on Mr. Payton's statements and the legibility of the handwriting, the Court finds that the handwriting is that of the Wells Fargo person who assisted the Debtors in completing the agreement. Mr. Payton also stated that the Debtors provided the figures to the Wells Fargo person in the course of a conversation with her; <u>i.e.</u>, the Wells Fargo person did not make up the figures. However, Mr. Payton was unable to explain to the Court how the Debtors arrived at the Part D figures after they had listed much different figures in Schedules I and J.

Page -2-

Case 05-51104-s7    Doc 14    Filed 03/16/06    Entered 03/16/06 12:55:00 Page 3 of 14

>     bankruptcy debt and other reaffirmation expenses
>     including monthly payments on post-bankruptcy debt and
>     other reaffirmation agreements total $<u>2,048.00</u>, leaving
>     $<u>752.00</u> to make the required payments on this affirmed
>     [<u>sic</u>; should be "reaffirmed"] debt.  I understand that
>     if my income less my monthly expenses does not leave
>     enough to make the payments, this reaffirmation
>     agreement is presumed to be an undue hardship on me and
>     must be reviewed by the court. However, this
>     presumption may be overcome if I explain to the
>     satisfaction of the court how I can afford to make the
>     payments here: <u>We are comfortable with our payment at
>     $380.00.  We can make our payments.</u>

Except as noted, this language is identical with what the relevant portion of § 524(k)(6)(A) requires.

The income and expense figures in the agreement vary substantially from those in the Debtor's schedules I and J. Schedule I shows income of $3,480.11 ($2,132.44 and $1,347.67 for Mr. and Ms. Payton respectively).  These figures are consistent with their income in previous years as disclosed in Question 1 of the Statement of Financial Affairs.  Schedule J shows expenses of $3,878, for a monthly deficit of almost $400.  (Schedule J includes the $463 payment to Wells Fargo on the truck.)  The agreement was not accompanied by an explanation of the difference in the figures between the agreement and the schedules and SOFA, in violation of NM IBR 4008.[4]

---

[4] **Rule 4008.  Discharge and Reaffirmation Hearing**
    Not more than 30 days following the entry of an order granting or denying a discharge, or confirming a plan in a chapter 11 reorganization case concerning an individual debtor and on not less than 10 days notice to the debtor and trustee, the court may hold a hearing as provided in § 524(d) of the Code.
(continued...)

Case 05-51104-s7    Doc 14    Filed 03/16/06    Entered 03/16/06 12:55:00 Page 4 of 14

Schedules I and J also disclose that both Debtors are employed, and that they have four children, the oldest of which is 17. During the hearing, Mr. Payton stated that Ms. Payton was having a kidney biopsy that day and will be out of work for some time afterward. Thus the Debtors' income has declined without a concomitant decline in the level of expenses.

Attached to the agreement is the title, which states that the truck was purchased 90 days before the petition was filed and that the actual mileage reading on the odometer was eight miles. The Debtor testified the truck was purchased new. In Schedule B/25, the Debtors listed two vehicles: a 2004 Pontiac Grand Am with 48,000 miles in good condition and a "2006 Chevy Pickup 44,000 Mi[les] Good Cond[dition]". Mr. Payton said that he thought the mileage figure stated in Schedule B was too high but was unable to say what the correct number was.[5] In their Statement of Intention (doc 2), the Debtors recite that they will

---

[4](...continued)
A motion by the debtor for approval of a reaffirmation agreement shall be filed before or at the hearing. The debtor's statement required under § 524(k) shall be accompanied by a statement of the total income and total expense amounts stated on schedules I and J. If there is a difference between the income and expense amount stated on schedules I and J and the statement required under § 524(k), the accompanying statement shall include an explanation of any difference.

[5] It occurred to the Court, belatedly, that in the spirit of Francis Bacon's parable about the scholars debating the number of teeth in a horse's mouth, the Court should have just asked Mr. Payton to go outside and check the odometer.

reaffirm on their mobile home but that, as to each vehicle, "Debtor will retain collateral and continue to make regular payments."[6] Despite the "retain and pay" language, the Debtors, probably at the suggestion of Wells Fargo, now seek to reaffirm the debt on the truck.[7]

**Analysis**

The Code requires the Court to advise unrepresented debtors of the legal effect and consequences of a reaffirmation agreement and default thereunder. § 524(d)(1)(B). The Code also requires the Court to approve or disapprove the agreement based on what the Court determines is in the best interest of the debtors and their dependents. § 524(c)(6)(A). To do that, the Court obviously needs to consider all the relevant facts, not just what is contained in the proposed agreement.

Section 524(m)(1) provides as follows:

> Until 60 days after an agreement of the kind specified in subsection (c) is filed with the court (or such additional period as the court, after notice and a hearing and for cause, orders before the expiration of

---

[6] The Debtors were assisted in preparing and filing their case by a bankruptcy petition preparer. How the Debtors could have elected to reaffirm the debt on their mobile home and "retain and pay" on the vehicles absent some fairly explicit legal advice from the petition preparer is not at all clear to the Court. What is clear is that the Congressional policy of expecting petition preparers to aid debtors without providing legal advice is completely unworkable.

[7] Thus not approving this reaffirmation agreement merely carries out the Debtors' original intention expressed in the Statement of Intention.

Page -5-

> such period), it shall be presumed that such agreement
> is an undue hardship on the debtor if the debtor's
> monthly income less the debtor's monthly expenses as
> shown on the debtor's completed and signed statement in
> support of such agreement required under subsection
> (k)(6)(A) is less than the scheduled payments on the
> reaffirmed debt. This presumption shall be reviewed by
> the court. The presumption may be rebutted in writing
> by the debtor if the statement includes an explanation
> that identifies additional sources of funds to make the
> payments as agreed upon under the terms of such
> agreement. If the presumption is not rebutted to the
> satisfaction of the court, the court may disapprove
> such agreement. No agreement shall be disapproved
> without notice and a hearing to the debtor and
> creditor, and such hearing shall be concluded before
> the entry of the debtor's discharge.

This section requires in part that, if the monthly income and expense figures set out in part D of the agreement show a loss or a net gain that is less than the payment sought to be reaffirmed, a presumption arises that the agreement constitutes an undue hardship on the debtor, and "this presumption shall be reviewed by the court." The debtor may rebut the presumption by providing written evidence of additional sources of income to make the payments. Nevertheless, and despite the odd wording of the statute, § 524(m) does not require the Court to rely only on the income and expense figures set out in part D of a reaffirmation agreement. Indeed, the requirements of NM IBR 4008 (quoted above) suggest precisely the opposite.

In this case, even before the family lost Ms. Payton's income due to the medical procedure, the Debtors were "underwater" on the monthly budget by almost $400. Deleting the

Page -6-

Case 05-51104-s7    Doc 14    Filed 03/16/06    Entered 03/16/06 12:55:00 Page 7 of 14

$463 truck payment leaves the Debtors about $66 in the black. Adding back in the proposed lower payment of $380 leaves the Debtors $314 in the red. If the figures in Schedules I and J were to have been inserted into Part D of the agreement, the presumption of undue hardship would have arisen. There has been no suggestion whatever of any additional source of income to make up any shortfall in the budget. Therefore under § 524(m) the Court would have been authorized to disapprove the agreement.

But even assuming that Ms. Payton's income were available to the Debtors, and that their income exceeded the total of their expenses plus the $463 or $380 truck payment, the Court would still not approve the agreement. Nothing in § 524(m) explicitly or implicitly requires the Court to approve a reaffirmation agreement. It is true that the statute recites that if the presumption is not otherwise rebutted, the court "may" disapprove the agreement. That is simply another way of saying that even if the debtor will go further underwater each month by making the payments, the court has the authority to approve the agreement. The language of the subsection certainly evidences a Congressional preference for the approval of virtually all reaffirmation agreements[8], but that is not the same as

---

[8] "Although conscientious courts will no doubt seek to urge debtor to reconsider proceeding with reaffirmation agreements, the new provisions clearly make the easier path that of approval notwithstanding the outcome of the calculation of the undue
(continued...)

Case 05-51104-s7   Doc 14   Filed 03/16/06   Entered 03/16/06 12:55:00 Page 8 of 14

staightforwardly requiring that a reaffirmation agreement be approved, which is how Congress could have chosen to write the statute.  In any event, such a preference or requirement would run directly contrary to §§ 524(d)(2) and (c)(6)(A) that mandate that the driver of the decision to approve a reaffirmation agreement be the best interests of the debtor and the debtor's dependents.

The facts of this case demand that the agreement not be approved.  If the truck does have 44,000 miles on it already, or anything close, its value is rapidly dropping.  The Debtors valued this truck at $25,000 on Schedule B; that is more than the cash purchase price.  That valuation suggests that the Debtors either negotiated a stunningly good price with the salesperson (who may have told them just that), or they are unable to value their assets as accurately as they need to.  The former is unlikely, and the latter does not bode well for the future.

Ms. Payton's medical problem also suggests the fragility of their financial situation.  Even if she returns to work quickly and is able to resume earning her full-time wages, the Debtors may still be faced with something going slightly (or not so

---

[8](...continued)
hardship formula."  David B. Wheeler and Douglas E. Wedge, A Fully Informed Decision: Reaffirmation, Disclosure and the Banruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 Am. Bankr. L.J. 789, 813 (2005).

slightly) wrong for a month or two which forces the Debtors to choose between paying for the truck or after-school care.

If the Debtors were to become re-obligated on this debt, even at the lower interest rate, they would be going underwater each month by $314.[9] Not only is that a bad lesson for Debtors to be receiving from a bankruptcy court, but it sets them up for a default and the resulting deficiency judgment, garnishment of wages and execution on their assets. The Debtors would thus be vulnerable to collection efforts and unable to obtain a discharge for years afterward, a situation highly advantageous for the creditor but reciprocally a disaster for the Debtors and their children.[10]

---

[9] The Court acknowledges a certain amount of unreality to treating the Debtors' budget numbers as if they were so firm. However, the Court needs to use some figures to make the calculations required by the statute, and the Debtors' estimated numbers are probably the best that are reasonably available.

[10] The extension of the times between discharges in chapter 7 and 13 cases, see §§ 727(a)(8) and 1327(f) respectively, provide a significant additional incentive for debtors' counsel and the courts to refuse debtors' requests to approve reaffirmation agreements.

That potential nightmare[11] for these Debtors and their children can be avoided by not approving the reaffirmation agreement. That does not mean of course that the Debtors necessarily lose the use of the truck. § 524(f) specifically allows the Debtors to make voluntary payments to Wells Fargo. Compare LaFave v. Ford Motor Credit Co. (In re LaFave), 9 B.R. 859, 861 (Bankr. M.D. Penn. 1982) (voluntary payments to retain or use vehicle allowed) with Mickens v. Waynesboro Dupont Employees Credit Union (In re Mickens), 229 B.R. 114, 117 (Bankr. W.D. Vir. 1999) (§ 524(f) does not allow a transaction that leaves the debtor obligated or believing that he or she is obligated). In other words, there is nothing to prevent Wells Fargo from agreeing with the Debtors that they can continue to possess and use the truck as long as they make the monthly payments and keep it insured, with the clear understanding that if the Debtors ever stop making the payments or maintaining the insurance, as they are free to do, Wells Fargo can repossess the truck, but it will not be able to obtain a deficiency judgment or

---

[11] The Court does not mean to suggest that in such circumstances Wells Fargo would necessarily engage in intensive collection activities against the Debtors. The Court does not know what Wells Fargo would do. (The fact that Wells Fargo has hired Mr. Kienzle certainly suggests a serious commitment to assuring compliance with the statute, and that provides a measure of reassurance.) But the Court must take into consideration what Wells Fargo in this case (and other creditors in other cases) could do. Thus, in a sense, the Court needs to act on what would be the worst reasonably possible outcome for the Debtors.

Case 05-51104-s7    Doc 14    Filed 03/16/06    Entered 03/16/06 12:55:00 Page 11 of 14

take any other collection efforts. Indeed, because Wells Fargo is presumably much more interested in a stream of payments from the Debtors instead of the truck, it may well be that Wells Fargo and the Debtors agree to reduce the interest rate even without the reaffirmation agreement.

It is unquestionably true that each Debtor in this case needs to have a vehicle. The family lives in Thoreau, a very small semi-rural community. With only a few exceptions, the communities in New Mexico have little or no mass transportation, particularly any that is conducive to managing a six-person family on a daily basis. Mr. Payton is a "Service Tech" for D&H Pump Service out of El Paso, Texas; that presumably means that he travels all over northwestern New Mexico servicing oil and gas pumps. He needs a truck, and a pretty good-size rugged one at that.[12]

However, an arrangement with Wells Fargo that is truly and completely voluntary will serve them just as well if they are able to keep and use the truck. Of course Wells Fargo, in the pursuit of its own best interests as it judges, is perfectly entitled not to go along with a purely voluntary agreement that

---

[12] Nothing in this memorandum opinion is intended to constitute an endorsement of Chevrolet trucks as being any "tougher" than, say, trucks from Ford, Dodge, Nissan, Toyota, Cadillac, etc.

Case 05-51104-s7    Doc 14    Filed 03/16/06    Entered 03/16/06 12:55:00 Page 12 of 14

allows the Debtors to retain and continue to pay for the truck.[13]
In that instance the Debtors are still probably better off, even
if it means starting anew with another vehicle that, one hopes,
will fit their budget better and present less risk of default.[14]

The Court had no obligation to notify Wells Fargo of the
hearing. Section 524(m)(1) provides in part that "[n]o agreement
shall be disapproved without notice and a hearing to the debtor
and creditor,..." But that notice requirement applies only if
the budget numbers <u>in the agreement</u> reflect a deficit if the
debtor makes the payment required by the agreement. In this
instance, the agreement says there is a monthly surplus of $752
which exceeds the $380 monthly payment. That those numbers in
the agreement differ so significantly from the figures in
Schedules I and J (which show that the $380 monthly payment puts
the Debtors $314 in the red each month) is irrelevant for
purposes of notice to the creditor.

**Conclusion and Order**

For the foregoing reasons, the Court finds that obligating
the Debtors on this reaffirmation agreement would impose an undue
hardship on Debtors and their dependents, and would not be in the

---

[13] Based on this Court's experience, that is not likely to happen. But if it does, the Debtors still have whatever state court remedies may be available to them to prevent or undo a loss of the vehicle.

[14] It is common knowledge that once the Debtors receive their discharge, they will receive a number of credit offers.

Page -12-

Case 05-51104-s7   Doc 14   Filed 03/16/06   Entered 03/16/06 12:55:00 Page 13 of 14

best interests of the Debtors and their dependents. The Court also finds that there was no obligation to provide notice of the hearing on the approval of the reaffirmation agreement to Wells Fargo.

IT IS THEREFORE ORDERED that the proposed reaffirmation agreement filed February 14, 2006 between the Debtors and Wells Fargo Financial Acceptance (doc 11) is not approved.

   Honorable James S. Starzynski
   United States Bankruptcy Judge

I hereby certify that on March 16, 2006, a true and correct copy
of the foregoing was electronically transmitted, faxed,
delivered, or mailed to the listed counsel and/or parties.

Arvin Payton, Sr.
PO Box 1435
Thoreau, NM 87323

Joan A. Payton
PO Box 1435
Thoreau, NM 87323

Wells Fargo Financial Acceptance NM
PO Box 250
Essington, PA 19029

Paul Kienzle
PO Box 587
Albuquerque, NM 87103-0587

James E. Burke

Page -13-